Thank you, Your Honor. May it please the Court, Counsel. We are here, Your Honor. I am representing a German manufacturer of a component part. Mr. Olson is representing the manufacturer of the machine that was involved in an industrial accident. We are here on the appeal of a Rule 41A2, voluntary dismissal by the plaintiffs. It goes without saying, but Rule 41 allows a voluntary dismissal after an answer has been filed with permission of the Court. There are some criteria that a court must look at. This circuit has a well-established set of criteria found in a number of cases, including the Ham case, the Pace case, the Seventh Circuit case. But those criteria were not followed by the District Court in dismissing this particular action. And there was no curative conditions on the refiling of a suit, which is also a requirement under Rule 41A2. So we are . . . Judge, can I ask a question I wondered about? Yes, Your Honor. Did Judge McManus actually preside in court in this case? Judge McManus did not preside in court in any of the hearings. Both the hearing to continue the original deadlines was not conducted by Mr. McManus, Judge McManus. It was conducted by the magistrate, Judge Scholes, whose . . . the entire transcript of both of the hearings that were conducted in person is found in the appendix. But Judge McManus was not physically present. I found the transcript of those proceedings before the magistrate judge. I've forgotten the name. Who was it? Scholes, Your Honor. I certainly gave you, all of you, plenty of time to express yourselves. Not only that, Your Honor, but he exhaustively, we believe, reviewed the issues before the court and gave a very reasoned decision in both of those matters, which, I might add, Your Honor, contrasts with the great brevity that Justice McManus delivered when he dismissed the action. And we believe that, of course, is the crux of the problem, as Judge McManus obviously did not . . . Well, Judge McManus has been around a long time. I think he will turn 95 next January or February, and he's no kid on the block to use that expression. Frankly, after reading the briefs and the transcript, I said, why don't these guys get their case ready to go? I agree, Your Honor. Are you the one who's here, there, and everywhere in Canada taking depositions? I am not, Your Honor. Somebody is. I am not here, there, and everywhere. Where's that person? I would leave to my colleagues to tell you who was everywhere taking depositions. Well, maybe it's the other side, but I was fascinated about it. I never had a practice like that. I never got to Canada. I got to Rapid City once. Go on. Go on. Go on. Frankly, I have a hard time taking this case seriously. Well, Your Honor, I appreciate that fact, but I must tell you that this case is very important for the President . . . It's important. It's a big case. This man lost what? He was very severely injured. It's surprising that he's still alive. Both arms were crushed. It was a very difficult, awful, terrible accident. Are you waiting for the lawyers to get the case ready for trial? He is, Your Honor. But if I may, to your point, it's very significant because this is exactly the type of case that is necessary for the litigants, not just because it's important because it's our case, but because the district court judge absolutely, unequivocally did not follow this court's precedent, didn't apply this court's principles, and just dismissed this case out of hand. Now . . . And therefore, I should get over my ire at the lawyers and send this back. Unequivocally. Where do we go? What's your claim for relief? Do we go back to ground zero or what? No, Your Honor. We don't go back to ground zero. We have the matter remanded back to the court with instructions. Because this is an abuse of discretion standard, this court can remand it back to the court with instructions to take the matter up exactly where it was before, set new prospective deadlines, and have the case proceed as follows. I would like to ask . . . or I'd like to add to my argument that . . . Well, perhaps with an imprimatur that the precluding the plaintiff's expert should be overruled? I believe that would be appropriate, Your Honor. Very clearly in this case, for the offered reasons by the plaintiff, that it's clear that Judge Scholes applied the correct standard. No, I'm saying got it wrong. Oh, he absolutely got it right, Your Honor. No, that'll get you guys going. Well, Your Honor, if this . . . Let's just say, I mean, the district court . . . what troubles me is the district court didn't wait for that . . . didn't . . . took the rulings out of order. I agree, Your Honor. You should have overruled the magistrate, Judge. The analysis was fine, but the remedy was too harsh, and said, now, okay, you got . . . you got this many days and no more. Get your experts out and get it done. That would be fine, too, had the court done that. The court didn't do that. But we can do that. Certainly you could. Why shouldn't we? For the reason Judge Vollman said. Well, you certainly could if you felt that was equitable, but you wouldn't be following your own precedent with regard to Rule 16a, and you wouldn't be following your own precedent with regard to Rule 41a. I don't think there's any . . . there's nothing locked in stone with these procedural issues. Well, that's . . . Case by case, hopefully get it right. That's true to a certain extent, Your Honor, but when the court refuses to even look at the tests that are well established, and if this court were to review it, you'd have to follow the same standards that apply when you file a motion to dismiss, or either before or after a deadline is run, and whether or not it's good cause or excusable neglect. And under this record, there's no question that the court . . . Judge Scholl's got it right, and Judge McManus got it wrong. There's no question in my . . . in my mind. I do think context is important, which is why, you know, in our briefs, we do have a section that's devoted to that particular issue, but in this particular case, deadlines were extended before, motions were filed before deadlines were extended before. When pressed by the district court why the deadlines weren't followed in this particular case, on page 162 of the appendix, plaintiff's counsel just says it was an oversight. Given that, and given that there was no reason when the original 41a motion was filed, there was no reason given at all for why there should be a voluntary dismissal, and I think under those circumstances, this court would be bound to follow the same procedure that the district court did, or the magistrate court did, or the magistrate judge, excuse me, with regard to the standards for Rule 16a and Rule 41a2. It seems to me you're overlooking the controversy, if you will, about whether Rule 16 somehow constricts the discretion often generously exercised under the discovery rules, and we've been back and forth, and other courts have been back and forth about when does the scheduling order, which is often set arbitrarily at the outset of the case, somehow constrict the district court's discretion as the case develops to grant more time, including time that's not in extensions that are not timely asked for. I completely agree, your honor, however, so we're not, if we bear in mind that lingering controversy over Rule 16 versus Rule 26 and 37, it's not so clear that if we just took this bull by the horn, so to speak, we'd be violating precedent, right? Although there is some tension between the rules with regard to the equitable principles to have the court conduct its own docket and set deadlines that are appropriate, there's no question that there is not that kind of tension or discretion when the deadlines have been missed and then the motion is filed here, in this particular case, you know, over a month after. My time has expired, I see. We would just ask the court to remand with instructions. Thank you. Very well, thank you. Good morning, you may proceed. Good morning, your honors. Good afternoon, I guess. It is afternoon. Good afternoon, your honors. My name is Steve Olson. I am here on behalf of Henkel, one of the other appellants in this case. May it please the court, I would, as Mr. Helton pointed out, there's factors in voluntary dismissal, there's factors that Judge McManus should have taken into consideration. I'd like to just briefly go through those because they they do seem to be of interest to the court. One would be the effort and expense that the defendants have incurred. In this particular instance, I would point out that the defendants, this case was... Excuse me, is this the rebuttal time? Because that's what it's marked on. No, it's not. We're splitting up the initial time and then we've got the rebuttal time thereafter, I believe. So you'll also do the rebuttal? I will, your honor. Very well, I guess. Your honors, the initial petition in this action was filed in September of 2012. The matter was then removed in December 13th of 2012 to federal court with a progression order on February 5th of 2013. That set an initial time, initially a deadline to add additional parties of April 1st and original plaintiff's expert deadline of May 1st, 2013. On that May 1st, plaintiffs did at that time move to extend expert deadlines, which was extended to that July 1st, 2013 date. It was then 39 days later on August 9th, 2013 that plaintiff filed their motion to extend their expert deadline, which was again after the deadline had already passed. But as far as the factors, the effort and expense defendants incurred. In this particular instance, the defendants had removed the case to federal court. The defendants had issued discovery to the record that plaintiff had not responded to that discovery up until the time the case was ultimately dismissed in November of 2013. Would you identify the discovery that won't be usable in the new state court case? I'm sorry? Identify the discovery that's wasted effort because it won't be usable in the new case. It was never answered in that case, so it couldn't be usable because it was never answered in the federal court case at all. In the state court case that they've subsequently refiled, there was additional discovery. You were talking about the wasted time for the defendants. Well, defendants issued discovery that was never responded. All right, so now you don't have to draft. You don't have to get your young associates to draft these incredibly long interrogatories. You just serve them. That's true. That is true. That was one fact. Give me some waste. Give me some real waste. Again, we retained experts. We subpoenaed records from Canberra. Those are all things that, yes, could they be used in the later case or in a but they're, again, as one of the factors, it's the effort and expense that we incurred. Those are things that the defendants did do. Those were efforts by them. Defendants answered discovery in the federal court case. We produced approximately 3,500 pages worth of documents. Ultimately, there were motions to compel that were filed after the issue of the expert discovery was even resolved by Magistrate Scholes, but even before that, we had answered discovery, produced a substantial amount of documents. The second one was plaintiff's diligence or lack thereof. Plaintiff had issued discovery to Hinkle. They had not issued any discovery to Pepperle and Fuchs. They had taken no depositions and had retained no experts, at least up until the time that the expert deadline had run and by the time that they had moved to dismiss. Third is the plaintiff's explanation for seeking dismissal. The request for dismissal was filed the day after Magistrate Scholes denied their request to extend the deadline for experts, and there was no stated reason. There wasn't a stated reason of additional parties or anything else. It was just that they requested dismissal. The last one is whether plaintiff or defendant has moved for summary judgment. In this case, it would be acknowledged that summary judgment had not been moved for. However, in the transcript of the hearings, I think it's pretty clear in a products case like this, without an expert, summary judgment is something that's going to be there coming. The one thing I would point out, and the court had asked Mr. Helton, but Magistrate Scholes said, if the court finds excusable neglect under these circumstances, then it's difficult to imagine circumstances where excusable neglect would not be found. And I think that's clearly here. The difference in this instance was the motion to dismiss was after the expert deadline had run. Once the expert deadline had run, it's a higher standard. In this case, it was just mere oversight, which was not excusable to neglect. And for that reason, we believe that the matter should be remanded back to the district court with instructions. Give me the case in this court or any other where the leeway that the plaintiff asked for, for the 39-day mistake, was granted and then reversed on appeal. I don't know that I could give you any. I don't know that I could give you any. I mean, all these cases you all love, it's because invariably we affirm the exercise of discretion. This one, I certainly agree with the magistrate's analysis of the excusable delay factors insofar as Rule 16 purports to trump Rule 37. That doesn't mean that it wasn't an abuse of discretion to basically throw the plaintiff out of court. No, but in this instance, I think our argument is... We didn't get a ruling on that from a very experienced trial judge. And I understand that. The trial judge had reversed Magistrate Judge Scholes.  That wouldn't have been reversed for an abuse of discretion, nor would we have reversed if he had upheld Magistrate Judge Scholes. My problem is that we don't have the ruling. And our problem is that the judge just sent out a one-line order dismissing the matter, or longer than that, a paragraph without taking these factors into consideration. That's really the issue that we're here before. I'll reserve the rest of my time for rebuttal. Very well, you may. Mr. Crowley. Good afternoon. Good afternoon. May it please the court, I'm Stephen Crowley, and I represent Bill and Michelle Mullen, the plaintiffs' appellees in this case. Your honors, we ask that the court affirm Judge McManus's ruling, because based on a fair, accurate, and a complete review of the facts and circumstances before Judge McManus, he was well within his discretion to grant the motion to dismiss without prejudice. Not with that amount of reasoning. Not with the total absence of reasoning. I understand that. I want to know why he didn't wait for the, or why he didn't rule on the appeal first. Your honor, I think the clear, there was pending a motion to appeal Judge Skoll's ruling, but there was also pending a motion to, various motions. And I think when he looked at the record and that Judge Skoll's made in the motion to compel, he simply decided that the case was appropriate for dismissal without prejudice, because the case was mired down. The case became entangled in discovery and procedural disputes. Therefore, I dismiss it. Yes, your honor. At the plaintiff's request. One of the entanglers. You tell me, you give me the case that's on all, that we're reasoning, anything like that reasoning in Rule 41A has been given and upheld. I don't have that case. No. Does not exist. I think it's, and I have all respect for Judge McManus's experience and savvy, but I don't, that reasoning just strikes me as, I'm sick of you guys. I understand your honor. And I don't think that's consistent with the Supreme Court telling us we have an unflagging obligation to exercise federal jurisdiction. Your honor, if anyone made a mistake in this case, it was me. I took too long to try and resolve discovery disputes with Henkel. Henkel was the manufacturer of the machine. This is a complex, not unique, but rare machine. And what injured Bill Mullen, as I explained to Judge Scholes in November of 2013, was a complex failure of interrelated hydraulic, electronic, and computer design systems. Overall, the entire machine was something called an E-stop. When the operator hit the big red button, which was called the E-stop, it was supposed to cut power to everything. The motor that rotates the big bowl and the hydraulic machines, the hydraulic motors that move the bowl in and out. These systems are all interrelated. There are not one, but two computers that control the machine. The PLC is a hardwire programmable logic control that runs the machine. Then there is a desktop computer, which was installed by a company called Computer Applications and Maintenance and the Cambrex employees. That computer told the PLC how it wanted to make the next batch of pharmaceuticals. But regardless, when Bill Mullen pushed the E-stop, he believed he had de-energized the entire machine.  This case got stalled and this is not an excuse. This is an explanation because I share the court's frustration. It is not in the plaintiff's interest to spend a lot of time on discovery disputes. But when Henkel, it wasn't until June 26th of 2013 that I received Mr. Olson's letter, which was in response to my good faith effort to try and resolve no answers to interrogatories, objections to every request for production, and frankly 3,500 documents which were disorganized. They were not identified and neither I nor our engineer could make heads or tails of most of them. I waited too long to give them an opportunity to try and solve these problems. I've had enough federal magistrates look at me and say, can't you work this out? And they are right. We have an obligation to do that. But that is practically not what happens in the real world today. And that is not the fault of my clients. The practical ramifications of what Henkel did in this case were to delay, delay, delay, three to four months, and then stand here with a straight face and tell you, we should be entitled to prevent the plaintiffs from having an expert because we decided not to answer interrogatories or respond to requests for production in a reasonable way until Judge Scholes told us in November, you better produce this because the days of hide the ball and ambush are over. Now I regret that it took that long to bring this issue before the court. But the record should also point out that the plaintiff simultaneously filed several motions. A motion to have regular discovery conferences every 45 days so that we could stop this stonewalling and get things motion, or moving, excuse me. A motion not only to overall rule the objections, but to require depositions. We'd asked for depositions. The deposition of Mr. Wandling, the Henkel expert who duplicated the fault shortly after Mr. Mullen was injured. You know, we're not going to, this is trial court stuff. I understand, Your Honor. But I think what I'm trying to point out, Your Honor, is that the record demonstrates that Judge McManus had before him far more than just some simple 39-day delay by the plaintiff. And so did Judge Scholes. And if you notice the difference in the transcript of Judge Scholes at the motion to compel hearing, I think he became convinced that this was more than just some simple neglect or garden variety neglect, as counsel likes to refer to it. As this court is well aware, naming an expert in a complex federal court case is much more difficult after Daubert and his progeny. I was struck by that because, as I recall, you were trying to find somebody, but it's hard to find an expert for this type of situation. Was that your problem? Your Honor, you can find experts on everything, and you can spend a fortune. The problem that we had was, and I tried to articulate this before Judge Scholes, is in federal court, one cannot just name an expert who has opinions. The expert has to have appropriate foundation and appropriate expertise in the opinions. What was unclear until recently in the discovery in the state court action is how the machine could possibly close with the E-stop engaged. And the only company that had that information originally was Henkel. There's another company that serviced the controls to the machine, and that was CAM. And they are a defendant in the state court case, and they're an Iowa corporation. So that would have defeated diversity anyway. So going back to the situation before Judge McMahons, he had a long motion to compel hearing that his magistrate had listened to and ordered in no uncertain terms that this case get moving and that the manufacturer produce information. Now, as I understand it, the magistrate judge at a November 4 hearing, I think what you just referred to, flagged the possibility of dismissal and refiling four days before the district court did that. Are we supposed to take that as coincidence or not? Your Honor, I would not presume to speculate on what was going through Judge Scholes' mind, but I think that that may have been his thought process. And I don't think it was a bad idea at all, obviously. Well, no, but it suggests that perhaps, although the district court, of course, signed off on it, this wasn't, but gave no reasons. It was really the magistrate's idea, prompted by your motion, which came one day. Your motion to dismiss came one day after he said you don't get an expert. But, Your Honor, I would point- I got the sequence right? Yes, Your Honor, with some, if I can add. The court should also note in the record that the plaintiffs filed an extensive brief in support of the motion to compel. The assertion by defense counsel- Well, I don't doubt that. Well, there was plenty of explanation for the reason for the motion to dismiss, and it was right in front of the court in a brief. No, no, no, no, no. This hearing was two months after the motion was filed. I understand, Your Honor. What I'm saying is that Judge McManus had not only the motion to dismiss without prejudice, but he also had a 14-page brief with exhibits supporting that motion, which did explain in detail, including the addition of state court defendants, including why the delay in discovery had been so- Was there a response by the other side to the exhibits? I'm sorry, Your Honor. Did the other side respond to your exhibits? I don't believe so, Your Honor. They simply filed a resistance, and I don't believe they argued the exhibits with any of their own. So, Your Honors, I think it's only with a myopic and selective view of the record can we be that, if I may, critical of Judge McManus. I've tried cases in front of Judge McManus, and he is certainly an excellent judge in my view. But one who is brief and to the point. And I think his ruling epitomizes the reasons for his granting the motion. This case is mired in discovery problems and procedural problems, and I think it tells you that he wasn't willing to simply exclude experts- What's the most analogous Eighth Circuit case for dismissing because it's mired in discovery disputes? I'm sorry, Your Honor. What's the most analogous Eighth Circuit case where a district court dismissed because this matter is mired in discovery disputes? I can't answer that question, Your Honor, because I couldn't- Or any circuit. I mean, that's just not- No, I- That's not a- But I don't think that was the sole reason, Your Honor. I think the court had in front of it the plaintiff's explanation that they were about to add a state court defendant, or excuse me, another defendant- Well, that's easy. I mean, you buy your motion. I understand. Did the parties, did the counsel ever appear in front of Judge McManus, or was it all before the magistrate and then the printed word? Your Honor, we did not appear in person before Judge McManus. We received his ruling, and that was it. He reserved ruling on the two motions until after Judge Scholes had heard the discovery dispute and got more information, and then we received that ruling. Your Honor, I don't want to overlook the fact that Judge McManus- I'm particularly troubled by defense counsel's characterization that Judge McManus didn't think about any of these things or ignored them. There's no support for that. Although he wrote a very brief ruling, I agree, there's no indication that he failed to read the briefs, that he failed to examine the record before he made that ruling. That was certainly well within his discretion as a district court judge. Your Honor, I want to go back to, and this is probably an inverse order, but one of the things that I wanted to address quickly, and I have very short time, is the defendant's claim that they were prejudiced, because the four current factors, of course, rule or govern whether or not Judge McManus' discretionary ruling was appropriate. There was no motion for summary judgment on file. There was no prejudice to the defendants. As we point out in our briefs, they each named an expert, and it was someone that they had hired pre-suit. They hadn't taken any depositions. They hadn't deposed the plaintiff. They hadn't interviewed other than their preliminary investigations. In other words, nothing had really progressed, and for my part in that, I apologize to the court, but I'm not the only reason. Without appropriate foundational facts and engineering documents and an explanation of how these control systems interrelated, for the plaintiff to have simply named an expert, and was not ready to provide a detailed rule 26 report, would have been inviting a Daubert hearing that would have been a turkey shoot. And that's precisely why the defendants didn't provide the information, because they know without appropriate foundation, you can call the most competent expert in the world in the field, but they can't give reliable opinions without the evidence. And that's one of the reasons we have the discovery rules and why they're so important. I think the court pointed out, I don't think there's really a conflict between rule 16 and between what happened in this case. I think that we often get very mired down in the minutia of scheduling orders and the procedures that we have, and they're all important, obviously. But the overall purpose of the court is to do justice and to give the parties the opportunity to try their case on the merits. And at the risk of getting outside the record, I've known Judge McManus for a long time, and I think that's exactly what he had in mind when he made the ruling that he did. I have a very brief time left, and I would invite, I've got a little less than a minute. It doesn't matter what happens if we affirm Judge McManus. What happens to the case next? Well, maybe we shouldn't even think about that. The case proceeds. My second question would be, what happens if we reverse Judge McManus? Where is the case then? I guess maybe that's not something we should think about. If you affirm Judge McManus, then the Mellons stay in state court and move forward with discovery, which we've already, it's moving better in this case. And Judge Drew has handled a couple of discovery hearings already. Is it clear there's no removal fraudulent joinder issue there now? Yes, Your Honor. That's gone? Yes. The in-state defendant, Cam, has answered to their interrogatories and produced documents which were very illustrative of why and how this happened. And I think the case is moving forward with speed. In fact, there's about a dozen depositions now set for the next 45 days. And is Cam related, corporate-wise, with the employer? No. I'm sorry, Your Honor. Cam Brecks is completely separate from Cam, who did work for Cam Brecks on the control systems of the computer. Thank you, Your Honor. Very well. Mr. Nicholson, again. Thank you, Your Honor. I just wanted to point out one thing that was brought up previously as far as what Judge Scholes was thinking. On the appendix on page 198, Judge Scholes states, My understanding of Judge McManus' last order is that he wants me to resolve the discovery disputes before he addresses the motion to dismiss or the motion to reconsider my prior order. So I think the parties need to go forward with all discovery and assume that this case is going forward, because you won't know what the resolution of that motion is to dismiss until sometime after these issues are resolved, as I understand it. So I think that's somewhat illustrative as far as whether it was some kind of a preamble or trying to tell Judge McManus something. But he then ordered a status report 18 days later. Exactly. And he also sent us away to have a meet and confer conference. So I don't think he had any indication that was going to happen. The other thing is that, probably the real proper cause of action here would have been to, prior to July 1st, file a motion to continue that deadline. Once that deadline's run and you've got a different standard of review on filing a motion to have experts after the time, defendants have won a distinct advantage. And for now to allow a dismissal, that takes away a defendant's advantage. What we're asking the court at this point to do is to, this appeals about Judge . . . We only want an advantage if the expert ruling isn't overturned. That's true, if it's not overturned. Which eventually could get to our court. I'm sorry? That would eventually get to our court. Yeah. Probably if Judge McManus had upheld the no expert ruling . . . That very well could get to you. That would have come to us. At least up until that point, though, we would have had an advantage. And again, this appeals about the dismissal of Judge McManus and his failure to consider the requisite facts. There isn't any evidence that he did do so. And for that reason, we'd ask remand back to forth instructions to reinstate the case with the deadlines as they previously were set. I'm going to indulge in a gratuitous comment that I shouldn't. I was struck by Mr. Crowley's observation of that's not how things work in the real world. Those of us who have not been in a courtroom other than as a judge since December of 1971, maybe I have no idea what you people do down in the trial court. In fact, I don't. But anyway, we thank both sides for your arguments. An interesting case.